

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **FEDERAL MARINE TERMINALS, INC.,** ) | CASE NO. 4:13CV01329 |
| ) | |
| Plaintiff, ) | JUDGE DONALD C. NUGENT |
| ) | |
| v. ) | |
| ) | |
| **DIMOND RIGGING COMPANY LLC,** ) | **ORDER ON** |
| **d/b/a ABSOLUTE RIGGING &** ) | **DEFENDANT-COUNTERPLAINTIFF'S** |
| **MILLWRIGHTS,** ) | **MOTION FOR ATTACHMENT** |
| ) | |
| Defendants/Counter/Third Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| **FEDERAL MARINE TERMINALS, INC.,** ) | |
| ) | |
| Plaintiff/Counter-Defendant. ) | |
| ) | |
| And ) | |
| ) | |
| **ORDOS CITY HAWTAI AUTOBODY** ) | |
| **COMPANY CO., LTD,** ) | |
| **INNER MONGOLIA** ) | |
| **OED ENGINE COMPANY, LTD., AND** ) | |
| **HAWTAI MOTOR GROUP, LTD.,** ) | |
| ) | |
| Third Party Defendants. ) | |

This case is before the Court on Defendant, Counter, and Third Party Plaintiff, Dimond Rigging Company LLC's Verified Emergency Motion for Attachment of Property (ECF #32). For the reasons stated herein, the Motion is DENIED.

This case originated with a Complaint filed by Plaintiff Federal Marine Terminals, Inc. ("FMT") on June 17, 2013. FMT filed an Amended Complaint on March 3, 2014. FMT alleges

1

Case: 1:13-cv-01329-DCN Doc #: 38 Filed: 06/26/14 2 of 8. PageID #: 601

that the movant, Dimond Rigging Company LLC d/b/a Absolute Rigging & Millwrights ("Dimond"), failed to pay FMT for loading and handling services for a shipment of a large automotive press from the Port of Cleveland to an ultimate destination in China. The parties have referred to this equipment as the "Line 7 Equipment." The Line 7 Equipment currently is in China.

Dimond filed an Answer with 27 affirmative defenses, and counterclaims, on August 9, 2013. Dimond filed an Answer with 28 affirmative defenses, and amended counterclaims, on March 13, 2014. One of Dimond's affirmative defenses is that FMT failed to join necessary parties. Dimond also asserts counterclaims arising out of FMT's alleged improper loading of the Line 7 Equipment.

On June 23, 2014, Dimond filed a Verified Third Party Complaint in this matter. (ECF #31.) Therein, Dimond alleges that the Line 7 Equipment does not belong to Dimond, but rather belongs to one or more of the Third Party Defendants, Ordos City Hawtai Autobody Company Co., LTD ("Ordos"), Inner Mongolia OED Engine Company, LTD ("Inner Mongolia"), and Hawtai Motor Group, LTD ("Hawtai"). Dimond claims that the Third Party Defendants are liable to FMT for any damages suffered by FMT, and are also liable to Dimond for any damages to which Dimond proves entitlement, and for any damages assessed against Dimond by the Court relating to FMT's claims.

Dimond further alleges in its Third Party Complaint that Ordos, Inner Mongolia, and Hawtai are Chinese corporations, with no permanent assets in the United States. Dimond claims that the Chinese corporations currently have personal property located in this district, but are in the process of removing the property from this district via a ship known as the Fortunagracht,

2

registered with IMO number 9507609 and MMSI 246621000 (the "Ship"), that will sail from the Port of Cleveland. The personal property at issue is known to the parties as the "Line 15 Equipment." The Line 15 Equipment, which is comprised in part of multiple enormous pieces of automobile stamping line equipment, weighs hundreds of thousands of pounds.

Also on June 23, 2014, Dimond filed the instant emergency Motion to attach the Line 15 Equipment. In the Motion for Attachment, and in a status conference held with the Court on June 25, 2014, Dimond's counsel represented to the Court that the Ship is scheduled to set sail on June 26, 2014. Anticipating the Line 15 Equipment's imminent removal from this district, Dimond's emergency Motion requests that this Court attach the Line 15 Equipment, so that FMT and Dimond will be able to collect on any judgment in this matter from the attached property.

Dimond's Motion for Attachment is made in part on the basis of Ohio Revised Code Section 2715.01(A)(1),(2) and (9), which provides grounds for attachment. This portion of the Revised Code states:

> (A) An attachment against the property, other than personal earnings, of a defendant may be had in a civil action for the recovery of money, at or after its commencement, upon **any one** of the following grounds:
>
> (1) Excepting foreign corporations which by compliance with the law therefore are exempted from attachment as such, that the defendant or one of several defendants is a foreign corporation;
>
> (2) That the defendant is not a resident of this state;
>
> ***
>
> (9) That the defendant has assigned, removed, disposed of, or is about to dispose of, property, in whole or part, with the intent to

3

defraud creditors....

O.R.C. § 2715.01(A)(1),(2) and (9) (emphasis added).[1]

Dimond claims that Dimond and FMT will suffer irreparable injury if the Line 15 Equipment leaves the district. According to Dimond, this is because the Chinese corporations allegedly will not have sufficient property located in this district from which FMT or Dimond may collect on any judgment awarded to either party pursuant to this litigation over the Line 7 Equipment.

Dimond further claims that the Third Party Defendants will not suffer damages if this Court were to attach the Line 15 Equipment currently at the Port of Cleveland, for two reasons. First, Dimond argues that the Line 15 Equipment has been located in the United States for three years, and that requiring it to remain here for longer will cause no harm. Second, Dimond contends that the Ship operates on a regular monthly schedule, enabling the Line 15 Equipment to be shipped on any of the Fortunagracht's later, regularly-scheduled, monthly trips.

The Court has considered Dimond's arguments in favor of attachment made in the Motion for Attachment, in addition to arguments made by the parties at the status conference on June 25, 2014, and supplemental briefing filed on June 25 by Dimond, Inner Mongolia, and FMT. Dimond's arguments in favor of attachment are not well-taken, for several reasons.

As an initial matter, Dimond's Third Party Complaint fails to comply with Federal Rule of Civil Procedure 14(a)(1), which governs when and under what conditions a defending party

---

[1] Given that the Line 15 Equipment appears to be located either in or alongside the Ship, the Court questions whether federal maritime law concerning arrests and attachments of property in this setting preempts state attachment law. Due to the timing of the Third Party Complaint and the Motion for Attachment, this issue has not been briefed by the parties.

may bring a third party into a case. Rule 14(a)(1) states:

> ***Timing of the Summons and Complaint.*** A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is or may be liable to it for all or part of the claim against it. But the third-party plaintiff must, by motion, obtain the court's leave if it files the third-party complaint more than 14 days after serving its original answer.

Fed. R. Civ. P. 14(a)(1). There is no dispute that Dimond filed its Third Party Complaint nearly a year after filing its original answer. There likewise is no dispute that Dimond failed to obtain this Court's leave to file the Third Party Complaint, as Rule 14(a)(1) requires. Because leave was neither requested nor granted, the Third Party Complaint is dismissed and stricken from the record, thereby mooting Dimond's Motion for Attachment.

Moreover, notwithstanding Dimond's failure to comply with Rule 14, the Stipulated Order entered by Judge Sara Lioi in the case of *Twinsburg Industrial Properties, LLC v. Dimond Rigging Company LLC, et al.*, United States District Court, Northern District of Ohio, Case No. 5:14CV00340 appears to preclude any lien claim by Dimond against the Line 15 Equipment except in the case of *Ordos City of Hawtai Autobody Company Co., Ltd. et al. v. Dimond Rigging Company, LLC*, United States District Court, Eastern District of Michigan, Case No. 1:13CV14909 (the "Michigan Case"). The complaint in *Twinsburg* asserts, among other things, that the Line 15 Equipment was unlawfully being kept on property that the plaintiff in *Twinsburg* sought to develop. According to that plaintiff, the failure to timely remove the Line 15 Equipment from the property was attributable to disputes and claims surrounding the Line 15 Equipment being litigated in the Michigan Case. On April 15, 2014, Judge Lioi entered the Stipulated Order, which required Inner Mongolia to issue a Letter of Credit in the amount up to

5

$226,850 as security for any judgment in favor of Dimond in the Michigan Case. The amount of the Letter of Credit appears to reflect the negotiated fair market value of the Line 15 Equipment, and was agreed to by the parties.

The Stipulated Order provides, in relevant part:

> This Letter shall be payable upon tender by Dimond's counsel of a certified copy of a Final Judgment, all appeals exhausted by the Court in the United States District Court for the Eastern District of Michigan in Case No. 13-14909 (the "Michigan Federal Court") in favor of Dimond and against Inner Mongolia (the "Final Judgment'), in the amount set forth in the Final Judgment, not to exceed the Stated Amount [$226,850.00].
>
> Upon issuance of the Letter, all liens claimed by Dimond on all portions of [the Line 15 Equipment] shall be extinguished, and Inner Mongolia shall have a right to immediate possession of the [Line 15 Equipment], free and clear of lien claims asserted, or **which could have been asserted**, by Dimond ..., including for purposes of transporting the [Line 15 Equipment] forthwith to China.
>
> \*\*\*
>
> Any claims asserted by Dimond against Inner Mongolia shall be brought in the Michigan Federal Court.

It appears that the Letter of Credit in fact was issued by Comerica Bank and delivered to Dimond on or about June 13, 2014. The delivery of the Letter of Credit precludes Dimond's current attempt to attach the Line 15 Equipment presently at the Port of Cleveland.[2] Indeed, Dimond offers no reason why the current claim for attachment is not one that the Stipulated

---

[2]The delivery of the Letter of Credit contradicts Dimond's claim that if the Line 15 Equipment is not attached by this Court there will be no remaining assets of Inner Mongolia in the United States to satisfy any judgment in favor of Dimond. The Letter of Credit is such an asset.

6

Order specifically precludes as a lien claim that "could have been asserted" in the Michigan Case.

In addition, contrary to Dimond's assertion, the Third Party Defendants will suffer harm if the removal of the Line 15 Equipment is further delayed. The Third Party Defendants are likely to incur significant additional costs related to: (1) the removal of any equipment already loaded into the Ship; (2) the removal of the Line 15 Equipment from the grounds of the Port of Cleveland; (3) identifying and leasing a space to store the equipment for an indefinite period of time, until all of the litigation in the Northern District of Ohio and the Eastern District of Michigan is resolved; and (5) maintenance of the Line 15 Equipment during the pendency of the litigation. Indeed, the court in the Michigan Case found in a June 6, 2014 opinion and order that Ordos and Inner Mongolia have already suffered irreparable injury in the form of damage to their reputation with the local Chinese government and their employees, and have likely suffered harm to their economic position in the Chinese auto market by being prevented from building a large SUV that is in high demand in China.

Further, in view of Dimond's argument that it will suffer irreparable harm if the Line 15 Equipment is removed from the district, it is unclear why the Motion for Attachment was not brought at an earlier time. Dimond and the Third Party Defendants have been embroiled in litigation over both the Line 7 and the Line 15 Equipment for quite some time. Indeed, Ordos and Inner Mongolia filed the Michigan Case against Dimond on November 27, 2013. The *Twinsburg* case has been pending for over four months. Moreover, the instant case has been pending for more than a year – since June of 2013. It is evident from the facts of these cases that Dimond has long known about the presence of the Line 15 Equipment in this district, and most

7

likely should have known that the equipment might be removed from this jurisdiction. Dimond has provided no viable explanation why it could not have filed its Third Party Complaint and Motion for Attachment much earlier. To be sure, one of the affirmative defenses set forth in Dimond's original Answer filed nearly a year ago was that FMT failed to join necessary parties, which Dimond evidently believed to be the Third Party Defendants. And nothing in Ohio Revised Code Section 2715.01 *et seq*. bars an application for attachment until the alleged harm is immediate. Revised Code Section 2715.01(A)(1) and (2) allows an application for attachment immediately after the commencement of an action if a defendant is either a foreign corporation *or* not a resident of this state. Both of these grounds for attachment have been satisfied since the beginning of this case. Yet, for reasons unexplained, Dimond chose to not file a Third Party Complaint and an application for attachment until June 23, 2014. The extraordinary relief Dimond requests in the Motion for Attachment is inappropriate considering the possibility that Dimond's dilemma with respect to timing likely could have been avoided.

For all of the foregoing reasons, the Court declines to order attachment of the Line 15 Equipment. Dimond's Motion for Attachment (ECF #32) is DENIED.

**IT IS SO ORDERED.**

*/s/ Donald C. Nugent*
DONALD C. NUGENT
UNITED STATES DISTRICT JUDGE

DATE: *June 26, 2014*