# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| FEDERAL MARINE TERMINALS, INC., ) | CASE NO. 1: 13 CV 01329 |
| ) | |
| Plaintiff, ) | JUDGE DONALD C. NUGENT |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| DIMOND RIGGING COMPANY, LLC, ) | |
| d/b/a ABSOLUTE RIGGING & ) | |
| MILLWRIGHTS, ) | |
| ) | |
| Defendant. ) | |

_____

| | |
|---|---|
| DIMOND RIGGING COMPANY, LLC, ) | |
| d/b/a ABSOLUTE RIGGING & ) | |
| MILLWRIGHTS, ) | |
| ) | |
| Defendant/Counter-Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| FEDERAL MARINE TERMINALS, INC., ) | |
| ) | |
| Plaintiff/Counter-Defendant. ) | |

This matter comes before the Court on the Motion for Summary Judgment (ECF # 26) filed by Plaintiff/Counter-Defendant Federal Marine Terminals, Inc. ("FMT") on the Amended Counterclaim of Defendant/Counter-Plaintiff Dimond Rigging Company, LLC, d/b/a/ Absolute Rigging & Millwrights ("Absolute"). Absolute has responded to the Motion, and FMT has replied. Thus, the Motion is ripe for consideration. For the reasons stated herein, summary judgment is GRANTED to FMT on Absolute's Amended Counterclaim.

1

I.  **FACTS**

This is a maritime dispute in which FMT seeks to recover three unpaid invoices for storage and terminal services for Absolute's cargo.  Absolute, by way of its Amended Counterclaim, seeks damages arising out of FMT's loading of a vessel prior to international carriage.

The cargo at the center of the parties' disputes consists of a large transfer stamping press from a defunct Chrysler plant in Twinsburg, Ohio. Absolute dismantled the press and transported it to the Port of Cleveland for shipment to China.  In total, there were about 132 pieces of press equipment (the "Equipment").

Absolute contracted with BDP International ("BDP") to act as Absolute's agent in arranging for shipment of all of the Equipment.  BDP informed Absolute that Logitrans International ("Logitrans"), an unlicensed non-vessel operating common carrier, would ship all of the Equipment.  However, Logitrans did not own a vessel.  Thus, Logitrans contracted with Scan-Trans, Inc. ("Scan-Trans"), a vessel charterer that operated the M/V Gisele Scan, to have the M/V Gisele Scan physically carry all 132 pieces of Equipment on behalf of Absolute.

Absolute hired FMT, a terminal operator providing stevedoring and other services at the Port of Cleveland, to provide storage and terminal services at the port prior to loading any of the Equipment.  FMT claims that it separately was hired as an independent contractor to Scan-Trans to load the Equipment onto the M/V Gisele Scan; Absolute appears to contest that FMT was an independent contractor to Scan-Trans.

FMT loaded only 98 of the 132 pieces of Equipment onto the M/V Gisele Scan.  Two bills of lading were issued with respect to the 98 pieces of cargo shipped from Cleveland to

China. Only those 98 pieces were identified in the two bills of lading. Thirty-four (34) pieces of Equipment were never loaded onto any vessel by FMT, and were never identified in the bills of lading.

When Absolute contracted with Logitrans for the carriage, Ronald Lech of Absolute signed a booking note memorializing its agreement with the carrier, and the applicability of the bills of lading. The booking note stated, "It is hereby agreed that this Contract shall be performed subject to the terms contained in Page 1 and 2 hereof which shall prevail over any previous arrangements and which shall in turn be superseded (except as to deadfreight and demurrage) by the terms of the Bill of Lading, the terms of which in full or in exact, are found on the reverse side hereof." Absolute was provided with a copy of the carrier's bill of lading form, which ultimately was issued for the cargo that was loaded.

Absolute was named as the shipper on the bills of lading. The bills of lading incorporated terms and conditions which were printed on the backside of each bill of lading. Those terms and conditions contained an "Additional Clause", which states as follows:

> U.S. Trade. Period of Responsibility.
>
> (i) In case the Contract evidenced by this Bill of Lading is subject to the Carriage of Goods by Sea Act of the United States of America, 1936 (U.S. COGSA), then the provisions stated in said Act shall govern before loading and after discharge and throughout the entire time the cargo is in the Carrier's custody and in which event freight shall be payable on the cargo coming into the Carrier's custody.
>
> (ii) If the U.S. COGSA applies, and unless the nature and value of the cargo has been declared by the shipper before the cargo has been handed over to the Carrier and inserted in this Bill of Lading, the Carrier shall in no event be or become liable for any loss or damage to the cargo in an amount exceeding USD 500 per package or customary freight unit.

3

The bills of lading further contained the following provision, referred to as a "Himalaya clause," and entitled "Defenses and Limits of Liability for the Carrier, Servants and Agents":

> (a) It is hereby expressly agreed that no servant or agent of the Carrier (which for the purpose of this Clause includes every independent contractor from time to time employed by the Carrier) shall in any circumstances whatsoever be under any liability whatsoever to the Merchant under this Contact of carriage for any loss, damage or delay of whatsoever kind arising or resulting directly or indirectly from any act, negligent or default on his part while acting in the course of or in connection with his employment.
>
> (b) Without prejudice to the generality of the foregoing provision of this Clause, every exemption from liability, limitation, condition and liberty herein contained and every right, defense and then and immunity of whatsoever nature applicable to the Carrier or to which the Carrier is entitled, shall also be available and shall extend to protect every such servant and agent of the Carrier acting as aforesaid.

The vessel carrying the 98 pieces of Equipment arrived in China on March 21, 2012. The cargo was released to the consignee in China on May 17, 2012. Absolute filed its Counterclaim against FMT on August 9, 2013.

Originally, Absolute sought damages for both the 98 pieces of Equipment that shipped to China, and the 34 pieces that were not loaded on a vessel. Now, in the Amended Counterclaim, Absolute seeks damages only for the 34 pieces of Equipment that were never identified in the bills of lading and never loaded onto any vessel by FMT.

## II. LEGAL STANDARD

Summary judgment under Rule 56 is appropriate where the pleadings, depositions,

4

answers to interrogatories, admissions on file, and affidavits show "that there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed .R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists," and the court must draw all reasonable inferences in the light most favorable to the nonmoving party. *Vaughn v. Lawrenceburg Power Sys*., 269 F.3d 703, 710 (6th Cir. 2001). When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986).

With regard to the non-moving party's obligation to set out specific facts showing a genuine issue for trial, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379-80 (6th Cir. 2007) (citation omitted). Rather, "Rule 56 allocates that duty to the opponent of the motion, which is required to point out the evidence, albeit evidence that is already in the record, that creates an issue of fact." *Id.* Accordingly, the ultimate inquiry is whether the record, as a whole, and upon viewing it in the light most favorable to the non-moving party, could lead a rational trier of fact to find in favor of the non-moving party. *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87. The Court's inquiry, therefore, asks whether reasonable jurors could find by a preponderance of the evidence that the non-moving party is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### III. DISCUSSION

The physical loading of a vessel is governed by maritime law. *Orgulf Transport Co. v. Hill's Marine Enterprises, Inc.*, 188 F. Supp. 2d 1056, 1061 (S.D. Ill. 2002) (claims involving the loading and unloading of ships fall within admiralty tort jurisdiction). The Carriage of Goods by Sea Act, 46 U.S. C. § 30701 (previously codified at 46 U.S.C.§ 1303(6)) ("COGSA") applies to "all contracts for the carriage of goods by sea to or from ports of the United States in foreign trade." *Fortis Corporate Ins., SA v. Viken Ship Management AS*, 597 F.3d 784, 787 (6th Cir. 2010). COGSA contains a one-year statute of limitations for cargo claims, which runs from the date of the delivery of the goods, or the date when the goods should have been delivered. 46 U.S.C. § 1303(6).[1]

Absolute seeks damages arising solely out of FMT's alleged negligence in loading (or failing to load) the 34 pieces of Equipment onto the M/V Gisele Scan. The question here is whether, as FMT claims, the one-year statute of limitations contained in COGSA bars Absolute's claims against FMT which allege wrongdoing in the loading process. For the reasons discussed below, the Court believes that it does.

As set forth previously, the bills of lading in this case contain an "Additional Clause" which explicitly provides that COGSA governs before loading, after discharge, and the entire time that the Cargo is in the carrier's possession. Thus, there is no debate that COGSA would govern activities during loading.

The bills of lading also contain a Himalaya clause, which extends the protections of COGSA – including its statute of limitations – to any agent of the carrier, *including independent*

---

[1] The COGSA time-bar provision applies to claims sounding in contract and tort. *Itel Container Corp. v. M/V TITAN SCAN*, WL 906347, 5-6 (S.D. Ga. 1996)

*contractors*, for damages arising from the agent's negligence or default while acting in connection with the agent's employment. The parties do not dispute that Himalaya clauses either identical or similar to the one incorporated in the bills of lading in this matter have been upheld as extending to a stevedore while in the course of loading the vessel. *See, e.g.*, *Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 31-32 (U.S. 2004). Moreover, courts have consistently applied the COGSA time-bar provision in cases where COGSA protections are extended to agents of the carrier via a Himalaya clause. *Celvo Co. v. Hecny Transp., Inc.*, 715 F.3d 1189 (9th Cir. 2013).

Absolute argues, however, that FMT is not entitled to the benefit of the Himalaya clause for two reasons. First, Absolute contends that the 34 pieces of Equipment are not subject to maritime law because FMT's bills of lading covered only the 98 pieces of Equipment shipped to China, never covered the 34 pieces of Equipment at issue, and those 34 pieces of Equipment were never loaded on the M/V Gisele Scan. Second, Absolute contends that questions of fact remain as to whether FMT was an independent contractor to Scan-Trans. Neither argument is well-taken.

Absolute's primary argument in response to FMT's Motion for Summary Judgment is that damages relating to the 34 pieces of Equipment which were not loaded onto the M/V Gisele Scan cannot be subject to maritime law (and, thus, COGSA and its one-year time bar). Specifically, Absolute argues that because these pieces were not referenced on the bills of lading, the bill of lading terms and conditions do not apply.

Absolute fails to cite any case law in support of its proposition. Further, case law supports the conclusion that the terms contained in the bills of lading issued with respect to the

7

98 pieces of Equipment shipped to China also should apply to the 34 pieces of Equipment that were intended for shipping to China, but were not loaded on the vessel.  The weight of available authority holds that when alleged wrongdoing or negligence with respect to goods intended for shipping occurs prior to loading and the issuance of a bill of lading, the carriage may nonetheless be governed by the carrier's standard bill of lading.  The carrier's standard bill of lading will govern when the parties, through prior course of dealing or practice, reasonably expected that the carriage would be subject to the carrier's bill.  *Stainless Sales, Inc. v. Evergreen America Corp.*, 2006 WL 1328845 at *6, 7 (E.D. Mich. 2006).  *See also Luckenbach S.S. Co., Inc. v. Am. Mills Co.*, 24 f.2d 704 (5th Cir. 1928); *Baker Oil Tools v. Delta Steamship Lines, Inc.*, 562 F.2d 938 (5th Cir. 1977); *Interflow (Tank Container System) Ltd. v. Burlington Northern Santa Fe Railway Co.*, 2005 WL 3234360 (S.D. Tex. 2005).

     In this case, it is clear that Absolute reasonably should have anticipated that the bills of lading which were issued covering the cargo that was loaded onto the vessel would also have been issued to cover the remaining cargo.  When Absolute contracted with Logitrans for the carriage, Ronald Lech of Absolute signed a Booking Note memorializing its agreement with the carrier, and the applicability of the bill of lading.  Absolute was even provided with a copy of the carrier's bill of lading form, which ultimately was issued for the cargo that was loaded.  Absolute desired and intended for all of its cargo to be shipped at the same time, and for all of the Equipment to be subject to the bill of lading terms and conditions agreed upon prior to shipment.  Absolute cannot now claim that the agreed-upon bill of lading terms and conditions should not apply to all of the cargo, particularly when those very terms and conditions were issued with respect to the bulk of the cargo, and where Absolute was provided with a copy of

8

those very terms and conditions months prior to loading.  Therefore, the fact that 34 pieces of the Equipment were not ultimately loaded on the vessel and were not referenced on the bills of lading has no effect on the applicability of all provisions of the bills of lading, *including* COGSA as extended to FMT as an independent contractor to Scan-Trans via the Himalaya Clause.

Absolute separately argues that an issue of fact exists regarding whether FMT was acting as an independent contractor of Scan-Trans or Absolute at the time of loading.  Absolute claims that FMT has failed to produce documentary evidence of a contract between itself and Scan-Trans, or documentary proof of payment by Scan-Trans.  Absolute is patently mistaken.  FMT has produced the affidavit of Keith Flagg, Vice President of Operations for FMT, which describes FMT's contractual relationship with Scan-Trans to perform the physical loading of the Equipment onto the vessel.  Moreover, attached to the Flagg affidavit are numerous invoices issued to Scan-Trans which provide detail of the loading services performed by FMT for Scan-Trans' account over a period of almost two weeks.  Attached to the invoices is an "Event Log By Gang" which shows the stevedoring and loading activities performed by FMT on a daily basis, and charged to Scan-Trans.  This documentation is indeed evidence of a contractual relationship between FMT and Scan-Trans.  Absolute cannot create an issue of material fact where it provides no evidence to rebut the proper proof set forth by FMT.  *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 800 (6th Cir.1994) (quoting *Matushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Indeed, the Federal Rules of Civil Procedure specifically allow  the Court to consider a fact undisputed, or grant summary judgment in favor of the movant, where the opposing party fails to properly address another party's assertion of fact.  Fed. R. Civ. Pro.56(e).

Further, Absolute cannot successfully claim, as it attempts to do, that FMT could not be an independent contractor to Scan-Trans while also acting as an independent contractor to Absolute.  Such an arrangement is entirely possible where, as here, FMT provided different services to each entity.  As set forth in the Flagg affidavit, Absolute contracted with FMT for terminal and storage services prior to loading the cargo on the vessel.  Once loading operations commenced, the cargo became the responsibility of the carrier. At this point the carrier, Scan-Trans, separately contracted with FMT to physically load the cargo onto the vessel, to carry out Scan-Trans' own obligations to Absolute.  The fact that FMT provided different services on behalf of Absolute and Scan-Trans at different points in the process is neither inconsistent, nor does it create an issue of fact that should preclude summary judgment on Absolute's Amended Counterclaim.

Because the undisputed evidence shows that FMT was an independent contractor to Scan-Trans for the application of the Himalaya Clause, FMT is entitled to the benefits of the clause and its application of COGSA defenses.  These defenses include limitations on damages and the one-year time bar for bringing cargo claims.

The one-year statute of limitations for cargo claims contained in COGSA begins to run when the goods were delivered, or when they should have been delivered.  The 98 pieces of Equipment shipped to China were released to the consignee on May 17, 2012.  Thus, this is also the latest date that the additional 34 pieces of Equipment should have been delivered.  Absolute did not file its Counterclaim until August 9, 2013, more than a year after the latest possible date of delivery.  Accordingly, Absolute's claims relating to FMT's loading of the Equipment are time-barred.  Indeed, Absolute concedes that its prior claims for damages allegedly sustained to

the cargo that was fully loaded were time-barred pursuant to COGSA; therefore, any claims relating to the remaining cargo are similarly time-barred.

Moreover, Absolute did not address FMT's argument that COGSA preempts all other claims for recovery.  Therefore, Absolute waives any opposition to this argument, and Absolute's claims for Breach of Contract, Negligence, Negligent Misrepresentation, Promissory Estoppel and Declaratory Judgment are dismissed.

## IV.  CONCLUSION

For all of the reasons stated above, the Motion for Summary Judgment (ECF # 26) filed by FMT on the Amended Counterclaim of Absolute is GRANTED.

**IT IS SO ORDERED.**

       */s/ Donald C. Nugent*
**DONALD C. NUGENT**
**UNITED STATES DISTRICT JUDGE**

**DATED:   September 26, 2014**